1, 2, 3, 8. We'll hear from Mr. Kirkland first. Good afternoon, your honors. May it please the court. My name is Johnson Kirkland. I'm here on behalf of Javier Portillo. There are two issues that I could discuss today that I described in my brief. One issue could potentially affect access to representation for thousands of people within the Gulf region under the FLSA. Without reaching that issue, I'd like to focus my discussion on specifically whether a prevailing party under any circumstance is not entitled to the remedy of attorney's fees and costs. And you're focusing on the word shall. Is that right? That's correct. In this case, there's no dispute that Mr. Portillo is the prevailing party in his lawsuit. He received a judicially sanctioned relief when the court approved a joint settlement agreement. As the Fifth Circuit has said in Cezanne v. Delta Concrete, an award of attorney's fees is a non-discretionary remedy for prevailing parties under the FLSA. By contrast, the district court decided that prevailing party or not, Portillo was not entitled to the mandatory remedy of attorney's fees. In doing so, the district court failed to provide a non-discretionary remedy. That, by definition, is an abusive discretion. You keep leaving out a really key word, reasonable attorney's fees. Yes. And I noticed that in your brief you asked for the $26,000 that the magistrate judge had originally awarded. I'm really struggling in a case where they had sent the check for the amount of the $1,300 and then they agreed to pay the penalty of the extra $1,300 fairly promptly after finding out who this guy was. How is it reasonable to spend $26,000 getting $2,600? I know the amount in controversy is not the sole thing that you look at, but it is a factor. And I'm really struggling here because it seems like y'all did a lot of things that caused a lot of extra time to be spent that was not reasonable. Sure. And that's a great point, Your Honor. And I think that that would be a good issue for the district court to decide on a remand. Yeah, but that's not what you asked for. You asked for the $26,000. That's correct, yes. And if it was Your Honor's determination that we were entitled to less, I was not prepared to discuss our exact hours, our time sheets today. However, ultimately... Well, we certainly don't want to see y'all again, so if we send this back, not any offense to you, we appreciate you, in this case. Because again, you guys, the clock is ticking on this $2,600. Y'all are here. It costs money to prepare for argument, blah, blah, blah, blah, blah. And it seems to me that even if we have to put aside Mr. Portillo's lies and misbehavior in whether he's entitled to the $1,300, we don't have to put it aside in looking at the reasonableness of this whole case. It seems to me a demand letter would have gotten this money and you'd be done with it. But this long-involved thing where you want to represent other people, you use the name they'd never heard of, then you sat around waiting to respond to the offer, and all of that seems to have just taken more and more and more hours. And I don't know where those factor in the $26,000, but I do think that's something we should address, is how should the District Court consider this, assuming we do remand it, assuming arguendo that we do remand it? Sure, Your Honor. I think the District Court should consider hours that, and to be candid with you, Your Honor, this case started before I started working for Roberto and Will at the law firm. So again, my knowledge of the exact hours that were expended and the time basis for the attorney's fees is limited. However, I agree that those factors should be considered in determining the exact reasonable amount of the attorney's fees. So, you're basically, you're just attempting to argue the proposition that equitable estoppel is never available in regard to attorney's fees? Not necessarily, Your Honor. Under Rumbleau, equitable estoppel is available. We don't dispute that equitable estoppel is an available defense in FLSA cases. What we do dispute is whether a prevailing party... You're saying it's not available against attorney's fees. That is what you're saying. No, I'm saying that it is available. I apologize, Your Honor. Yes, I am saying that it is. It is. It's not available against... It could be available against the merits, but once you win on the merits, you think you get the shell. That's correct, yes. And again, Mr. Petillo is a prevailing party in his lawsuit. He achieved what he would have achieved on the merits of his case. The only case that the defendants point to that arguably speaks for the proposition that a prevailing party may not receive attorney's fees in an FLSA case is Stabiele v. Eagle Grouping. It's an out-of-circuit Southern District of Florida case. That is the entire basis for the district court's opinion. Again, to be a prevailing party, you need more than just a settlement agreement. You need judicially sanctioned relief. That did not occur in this case. Let me ask you a question, though. I'm not coming off what Judge Haynes was talking about. The defendant reached some kind of agreement with the Department of Labor, and pursuant to that agreement was going to pay every worker the amount of back wages that were and Mr. Portillo claims he didn't get it? That's correct. Okay, so why did he file suit? Well, he would have had a right to file suit regardless of whether the offer was made or not. Why? Under Fifth Circuit case law, a settlement offer does not preclude a right to relief. You can decline the settlement offer if you believe that the amount was not correct. What was he claiming he was owed? He was claiming at the time that he was owed, I believe at the time he was he was saying that he was owed 50 to 70 hours, or he was working 50 to 70 hours per week beginning from the time that he started working for permanent work. And what was that worth? It was extensive. I believe it was in range of $50,000 to $70,000. A $1,300 settlement? Right. Well, so there were not records to substantiate what he believed he worked. It is not Mr. Portillo's responsibility to keep complete and thorough records of all of the payments made for the work that he performed. That is the burden of permanent workers to keep those records. And our job as his attorney is to make sure that the amount that they're claiming that he's owed is the correct amount. And he has the right to... So, but you eventually settled for $2,600, right? We eventually settled... That's correct, yes. Yes. Well, that was an attorney's fees, I believe. I understand that. The supposed statutory damages for the underpayment was a total of 20. Instead of $1,300, he ended up with a check for $2,600. That's correct. All right. So this claim about $50,000 seems a little stretched, maybe. I agree. Which is why I was going back to the beginning because it looks as if the whole case was exaggerated from the very beginning. Plus, you had the confusion and the cost to the defendants that he was not who he said he was. Right. So, Your Honor, again, I agree that the costs and fees that we accrued and that we claim in our motion for attorney's fees... Again, without looking at the timesheets, I can't agree with that. I agree that that is a factor. And, you know, if the court on remand decides to reduce our fees, I think that that's what a motion for attorney's fees is designed to address, that specific issue, what the reasonable amount of attorney's fees... Let me ask you a question. If Bromelow... I mean, Bromelow does say that you can have equitable SOPLAs a defense on the merits, right? That's correct. So, what does... I believe the FLSA is pretty forthright, pretty strict about liquidated damages, double damages, right? Does it use the term shall as liquidated damages? That's correct. It applies to any remedy under the FLSA. Well, so, again, if you have equitable SOPLA under that circumstance and your principal argument about attorney's fees is also the use of the word shall, why is an equitable SOPLA equally available for attorney's fees? So, in Bromelow, equitable SOPLA was applied, again, to any remedy under the FLSA, and the reason why they decided to apply it, again, well, not again, to this narrow set of facts is because the plaintiff lied about the amount of hours that she worked. Well, here Mr. Portillo lied about his name and then he didn't set this up properly as a collective action, then he must have wildly overestimated the amount of actual damages he could prove, so what's the difference? Well, he didn't misrepresent the number of hours he worked to his employer. He didn't, you know, lie in order to obtain an unjust advantage over his employer. So, is your argument that the employer was not therefore damaged in any way? That's correct. Except by the attorney's fees. Except by the attorney's fees, which again, I think. Well, and to clarify, the $2,600 was calculated by $1,300 of unpaid wages and $1,300 of liquidated damages, the kind of double damages, so this $1,300 number that they've had all along, long before the lawsuit that they wrote the check for, has never been altered by all of this litigation up and back and up and back. You're in the second time in front of us. That's why I said I didn't want a hard time. Again, not any, all your lawyers are great, but we'd like you on another case, is what I'm saying. So, it just seems funny to me that there's any reasonable attorney's fees here, but. Well, something I wouldn't mention, Your Honor, if you'll allow me to, and I think that we've again discussed the relevant issue here. It's the threshold issue that I think we should focus on in this case, and it sounds like you'll agree. To be fair, Your Honor, the first appeal was based on a dispute that our client shouldn't be able to proceed on this individual claim based on the same argument that was presented against our motion for attorney's fees, was that our client used an alias in order to obtain an unjust advantage and therefore should not be allowed to proceed on the merits of this claim. However, the court dismissed our case without prejudice, dismissed the individual claim without prejudice, and as you know that, that, just using alias, he used a false social security number. That's correct, yes, yeah. I mean, that's a crime. That's a crime, but it doesn't go to the merits of this case. Well, if we're ever going to equitably estop someone, it would seem like somebody's lied about the social security number might be one of the first in line. Right, so there's a corollary case to this. Not just lied about his number, lied that he had a number and then lied about the number and then lied about the name, so that's a fair amount of lying. Sure, there's a job he wouldn't have gotten had he not done the lying. Right, but he wouldn't have obtained, it wouldn't have been the situation, you know, regardless of whether he was employed illegally or not, it wouldn't have been the case that he wouldn't have a claim for overtime if he hadn't lied to his employer. You can make the same argument. You can't make the argument that just by virtue of somebody accepting a job, that they should have known that they were going to get into an accident, that by virtue of accepting... No, I understand. I mean, I understand the argument that having done the work, he gets the compensation. I get that argument, so I'm not really directing my point to that. I'm directing my point to this notion of if there is a basis for equitable estoppel, it would seem that somebody who committed a crime and lied about something that would have deprived him of getting that job, that might be one of the people that would be in line for an equitable estoppel argument. I believe that that would be the case if it were true that, you know, under the FOSA, only folks who are employed legally in this country were entitled to the protections of the FOSA, and that's not the case. Whether they're undocumented, documented, legal, or illegal, they're entitled to the same protections under the statute. Okay, thank you. You have time for rebuttal. Thank you. Yes, sir. Mr. Foster? Yes, Your Honor. Murphy Foster on behalf of Permanent Workers and Danny Sapero. It sounds like you got the facts right. In September of 2014, the Department of Labor started this investigation and concluded it. It wasn't that my client failed to pay overtime. That was never found by the Department of Labor, never asserted except in their lawsuit. What it was, it was a miscalculation of a per diem payment, whether or not per diem had to be paid by the day only or could it be reduced to an hourly. It has to be paid by the day my client was found owing, and they immediately paid up. In January of 2015, they wrote Felix Serrano, along with a number of other employees, a check for the deficiency specifically found by the Department of Labor. Did they pay the double damages at that point? There was no lawsuit. There has to be a lawsuit to get the double damages? It doesn't have to, but typically there's not, just as a matter of practice. It is, if a lawsuit is filed, double damages are available. But are they mandated, period? In other words, should they have paid that? If it is owed, it is mandated. If it is paid voluntarily, I would argue that it is not. It is no different than finding out that you've underpaid an employee, and before there's any action, write him a check for the deficiency, except the Department of Labor pointed it out to us, and we wrote the check. We wrote the check in January of 2015. The lawsuit wasn't, and it was never claimed, of course, because it was written to Mr. Felix Serrano, the individual whose Social Security number we relied upon when we hired him. We relied on that Social Security number for the I-9, for his medical application, for about five different things. There were five criminal laws broken by using the wrong Social Security number and identification for him to get this job. And does that matter because of the argument that, well, he gets the money anyway, so does it matter for purposes of equitable estoppel? I mean, I'm now taking the counter position to the discussion I had with your operate. Does it matter that he committed all these crimes, told all these lies, did all this stuff, since he's still entitled to the compensation? I believe it does. If equitable estoppel is ever in play, it's in a situation where a plaintiff lies to gain an advantage over a defendant. And in this particular case, there was no fessing up in the complaint. It wasn't until we filed the motion for summary judgment saying we've never had a Javier Portillo that he, buried in the midst of his opposition to our MSJ, says, oh, by the way, Mr. Portillo really worked as under an alias of Felix Ruto. No, he lied about who the person was that had the job at Permanent Workers. I think if ever equitable estoppel is appropriate in any FLSA case, and plaintiff admits that they are, appellant admits that estoppel is an appropriate defense and can be an appropriate defense in an FLSA case, what doesn't connect to me is the fact that he says, you can't bring the case, you can have the whole case dismissed on the basis of equitable estoppel, but attorney's fees, it's not a defense in attorney's fees because of the mandatory language. I don't, I don't think that's right. I don't think that's correct. In the Stabaley case, out of a different circuit, district court, middle district of Florida, similar situation, mandated attorney's fees statute, FLSA case, settlement for $10,000 approved, despite what my worthy counsel said earlier, it was specifically approved in an order signed by the district court there approving that settlement, which means they were the prevailing party too, but because it was because of the fraud that was committed, it was thrown out. Reasonableness is the question. Yes, there's mandatory language, but is there a point at which estoppel is so bad that reasonable means you shouldn't get anything? Well, I'm sorry you didn't find a case where I sat on the panel a year or two ago involving the Fair Debt Collection Practices Act, which I believe has mandatory fee shifting, and we denied fees, or we said the district court did not abuse his discretion by denying fees. I'm sorry I didn't try that too. Sounds like a great case. Well, basically the client in that case was the lawyer's secretary, so that gives you a little starting hint, but anyway, and I don't recall whether it was published, or I'm pretty sure it was a published opinion, but anyway. Regardless, I missed it. I apologize for that. Well, I want to get back to the reasonableness. So the argument, I guess, is that even if we accept that the check was kind of an offer, the check was only for the $1,300, they collected $2,610, so their argument is, well, we had to sue to get the other $1,300. I'm just wondering where in this process, the timing of it, it just seems to be ships passing in the night, they're suing under Forteo, you don't know who they are, then we have this thing about the collective action and the appeal on that and all that, and then in the very end, wow, this huge victory of $2,600. When did you all offer that amount? Because I kind of feel like that's when the amount of attorney's fees ought to stop. We had a case, Land v. Garuli, I think it was last year, where we talked about this, that the district court has to factor in, doesn't have to make that the sole factor, but factor in the fact that an offer was made and so on and so forth. So when in this whole long story did you all say, we'll give you the $1,305 and we'll give you the double damages? Almost immediately after this course reversed and remanded the first time around. Okay, and then it still went on for a while after that? It did, because they didn't like your settlement. They never liked their settlement, and ultimately they bought the settlement language that had been pretty much on the table the whole time, and because we said it's $1,300. And is that part of the $2,600? I'm just trying to think, I mean, I haven't dug down into all of the attorney's fees requests, but does the $2,600 encompass all of this stuff, the original suit that didn't explain who this person was, and then the appeal, and then the remand, and then this, and then that, and how much of that is really reasonable? So I guess what I'm saying, assuming arguendo, we don't think equitable estoppel blocks the whole thing. I can't answer that question as I stand here today, because my argument is reasonable, in this case being zero. Wouldn't have required anything if he had been properly identified. He got a check for $1,300, $1,305, and never would have had to hire a lawyer, never would have had to file a suit. Nothing would have been done. My co-counsel might be able to answer that question. I'll dish that to him. So you're saying even without finding estoppel, but that doesn't fit with the fact that he got $2,610, not $1,305? He got the $2,610 because... So he did prevail over what he would have gotten had he just cashed the check you all sent? Yes. Okay. So then that... After a lot... Unless we buy the equitable estoppel argument, he gets something. If the equitable estoppel argument belongs or is in place in arguing that it should block an FLSA, this FLSA action because of those bad actions, then why shouldn't it block the right to recover attorney's fees? I don't... If we don't buy that, then he gets something. If you don't buy that, then arguably he should get something, but... So we should remand for starting... I would hope not. I would hope not. You want us to award the $2,610, but we can't. We can't make the fact finding on what he's owed. I mean, we can decide as a matter of law that equitable estoppel bars the whole thing. We can decide as a matter of law that he should just get the $26,000 the magistrate judge already spoke to, but we can't... If I'm concerned and if my colleagues agree with me that they haven't really fully analyzed the reasonableness of this, there's only one person who can do that, and that's the... Well, that would be correct. I don't think that he's entitled to a dime. Let me ask you a question. The magistrate judge's opinions are very peculiar because he writes the case entirely one way to award the attorney's fees, and then he completely flips with the exception of a page or two. Was it your brilliant briefing that accounted for that? What was it that accounted for that? No, Your Honor. It's always been front and center in all of our briefings. Estoppel has, and it was paragraph number 12 in our affirmative defenses when we originally answered this lawsuit. All honesty, I think his law clerk missed it because he didn't reference it. He suggested that we didn't trial it, so that's the only thing we objected to. Went up to Judge James. He says, right here, send it back down. He said, okay, Estoppel, you got it. Yes, and he cites the law clerk. I think that's pretty good. I'll tender the rest of my time, Your Honor. Okay. Thank you. Mr. Unger? Thank you, Your Honor. Al Unger for Conrad Industries. May it please the Court. Judge Hange, I wanted to try to answer a couple of the questions you asked about the settlement. The first draft of the settlement agreement was tendered to Mr. Portillo March 8, 2017. Checks were tendered on April 11, 2017. The case was remanded back to the District Court in the fall of 2016, so around that time period. To address the second question about valuation, what the number should be, I don't think that the tendering of the settlement checks or the Mr. Portillo is entitled to fees at all, and I think that Estoppel should prevent that. But, if the Court disagrees and the case is remanded for amount, we had to do a bunch of work because of Mr. Portillo's dishonesty. We had to file motions. We had to deal with an appeal. We had to deal with a conditional certification issue, all the results of the conduct that supports the Estoppel finding. Did you all seek sanctions? Conrad did not. I do not recall if permanent workers did. We filed some separate briefs and it was permanent workers' summary judgment. It was not Conrad's summary judgment. So, there was a lot of work that we had to do as a result of what was a challenging filing. But what does that have to do with the reasonableness of their attorneys? I agree that their responding to your work is probably not reasonable attorney's fees, but they still have to do something to get that extra $1,300. So, I think the answer to both of those questions is yes, Judge, I do. I think that if it is applicable, it is likely that the attorneys here are entitled to something. I would argue that it's a small, small number because of all of the circumstances that we have. But you would argue that Estoppel is a valid consideration whether or not he got $2,600 as opposed to $1,300, right? That's exactly right, Judge. Because of all of the conduct that my colleague described and because of this court's decision in Brumbulo, which has been around for about 50 years, we think that Estoppel is available to preclude it altogether. The first appeal came up on the basis that apparently the judge was offended that Mr. Portillo, acting under a quote alias, had set himself up as a plaintiff for a collective action suit, right? And the district court hauled off and dismissed him and the whole . . . as well as collective action, right? You know, I don't know about the court's offense or not, but I know that the court did dismiss the whole action as part of . . . Well, my question is, did the defendants ask the court to dismiss the entire action, not just the collective part of it in the beginning? Conrad did not do any of that because Conrad was not . . . that was not my motion. So I think that permanent workers did file a motion that asked for complete prejudicial dismissal. And he dismissed it without prejudice, evidently. So then it goes up and the Fifth Circuit says, no, you can't dismiss the individual. Right. With relying on the reasoning for why you would deny conditional cert. Well, so my only . . . what I'm getting to is that the first appeal is only partly the product of Mr. Portillo's representations. Because the court . . . the district court could have said, he is not an adequate representative for collective action, but I'm not dismissing his case individually. Yes, that's what the district court could have said, and I think that's what the Fifth Circuit kind of stated in its opinion. Right, okay. So, but in this case, and my time's nearly up, so I'll just . . . What do you mean? Post-remand? Is that what you're saying? This case? No, I mean the whole thing. Okay. The complaint that was filed, document one of the record, page one, is the same complaint that was pending at the time that we settled it. We settled the case for double the amount of money that was tendered years earlier, and the majority of the time, the money in this case was dealing with Mr. Portillo's dishonesty. Is he working still somewhere else? I don't know, Judge. And under what name? You know, Judge, I really don't know. I know. But if there's nothing further, Your Honor, I'll conclude. Okay, thank you. Your Honor, so I'll try and keep this brief. I just wanted to address a couple points that we've already touched on. As to the Department of Labor's settlement offer, an FLSA violation is an FLSA violation, and regardless of the tender of the offer, my client was entitled to file a lawsuit. My client was entitled to decline that offer on the basis of enforcing an FLSA violation. I don't believe that there should be any dispute on that. And beyond that, one thing I will say regarding defendant's briefs, initially in response to our motion for attorney's fees, compared to their memo objecting to the magistrate judge's recommendation that we receive attorney's fees because our client was the prevailing party. When you compare these two briefs, they're identical except for Stabielli. That is the only difference between those two briefs is this, again, out of circuit and no disrespect to the Southern District of Florida, but there is no case law in the case. Stabielli also does not appear to be a case that supports Eckford-Wolstaple here because, just like Brumbelow and every case that deals with this issue in the Fifth Circuit, the plaintiff in Stabielli was not a prevailing party. With that, unless you have any questions, I yield my time. All right, well good. Thank you very much. We appreciate it, and we'll take it under advisement and be in recess until tomorrow morning.